752 So.2d 30 (2000)
Charles "Chuck" Seth SCOTT and Linda Scott, individually and as parents and natural guardians of Leilania Scott, Linsey Scott, and Seth Scott, Appellants,
v.
FLORIDA DEPARTMENT OF TRANSPORTATION, Appellee.
No. 1D97-211.
District Court of Appeal of Florida, First District.
January 25, 2000.
Rehearing Denied March 3, 2000.
*31 Edwin A. Green, II, Tallahassee, for Appellants.
Robert A. Butterworth, Attorney General; William Peter Martin, Assistant Attorney General, Tallahassee, for Appellee.
VAN NORTWICK, J.
Charles and Linda Scott challenge a final judgment dismissing with prejudice the second amended complaint in their tort action against the Florida Department of Transportation (DOT), which arose out of an accident in which the Scotts' vehicle struck a concrete traffic signal pole installed by DOT. Because we agree with the trial court that, under the allegations of the instant complaint, sovereign immunity bars the appellants' causes of action, we affirm.

Factual and Procedural Background
The Scotts and their children were involved in a motor vehicle accident while traveling southbound on State Road 369 in Wakulla County. As alleged in the second amended complaint, the accident occurred on April 10, 1988 at approximately 5:30 p.m. when a vehicle traveling in the northbound lane turned in front of the Scotts' vehicle. The vehicles collided and the Scotts' vehicle then struck a concrete traffic signal pole at the southwest corner of the intersection. The Scotts incurred significant injuries.
Charles and Linda Scott, individually and as parents and guardians of their three minor children, filed a complaint against the DOT, alleging that DOT failed to use reasonable care in the design, construction and maintenance of the intersection where the accident occurred. DOT moved to dismiss the complaint, arguing that the action was barred by sovereign immunity. The complaint was dismissed without prejudice. Appellants then filed their first amended complaint which contained four counts, all but one of which were subsequently dismissed. Rather than proceed solely on the single count of failure to construct the traffic signal pole according to plans, appellants chose to file a second amended complaint which contained two counts: failure to construct the traffic signal pole according to plans (count I) and failure to warn about or correct a known dangerous condition (count II).
With regard to count I, the gravamen of the complaint is that DOT was negligent in placing the traffic signal pole in a place other than the place designated in the plans prepared by DOT when the intersection improvements were designed in March 1986. According to the Scotts' allegations, which we must accept as true in this appeal of an order of dismissal, see Londono v. Turkey Creek, Inc., 609 So.2d 14, 18-19 (Fla.1992), the pole was placed closer to the roadway than specified on the plans. The complaint does not allege the distance of the pole from the roadway, *32 whether the placement of the pole constituted a deliberate revision in the plans, or whether the pole was installed incorrectly by the contractor performing the intersection improvements. As for count II, the Scotts alleged that in placing the pole closer to the road than was originally designed, DOT created a dangerous condition of which it knew or should have known and regarding which DOT should have provided a warning or made a correction.
On motion of DOT, the lower court dismissed the second amended complaint following a hearing, the transcript of which is not contained in the record on appeal. With respect to count I, in the order on appeal the trial court stated that the Scotts failed "to state a case of negligence against the D.O.T." The court noted that decisions concerning "the installation of traffic control devices, initial plan and alignment of intersections, and improvement or upgrading of roads and intersections" are judgmental, planning-level functions, and as such, decisions regarding such matters are protected by sovereign immunity. The lower court added, even if sovereign immunity did not shield DOT, "the actions of the driver of the car which forced the plaintiffs off the road constitute an independent, efficient intervening cause...." The court found that the "location of the poles was not the proximate cause of the plaintiffs' injuries," citing Department of Transp. v. Anglin, 502 So.2d 896 (Fla.1987), and Middlethon v. Fla. Power & Light Co., 400 So.2d 1287 (Fla. 3d DCA 1981).
The lower court also found that count II failed to state a cause of action, because the complaint contained no ultimate facts to support the claim that DOT had actual or constructive notice of a dangerous condition. Thus, the lower court found that sovereign immunity barred the claim on the authority of Garza v. Hendry County, 457 So.2d 602 (Fla. 2d DCA 1984), and Zuniga v. Metropolitan Dade County, 504 So.2d 491 (Fla. 3d DCA 1987).

Planning Versus Operational Activities
One of the more vexing questions in Florida jurisprudence is the scope of the statutory waiver of sovereign immunity. As reiterated in Lee v. Department of Health and Rehabilitative Servs., 698 So.2d 1194, 1198 (Fla.1997), discretionary policy-making or planning activities of governmental entities remain immune from tort liability. However, immunity from tort liability is waived for negligent activities that are operational and for which a common law or statutory duty of care exists. Department of Health and Rehabilitative Servs. v. B.J.M., 656 So.2d 906 (Fla. 1995); see also Trianon Park Condominium Ass'n v. City of Hialeah, 468 So.2d 912 (Fla.1985); Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010 (Fla. 1979). The question of whether an underlying common law or statutory duty of care exists is a separate question from whether the governmental activity at issue is a planning or operational function. Vann v. Dep't of Corrections, 662 So.2d 339 (Fla. 1995).
The Scotts argue that count I does not allege negligence in the planning activities of DOT, but rather in the implementation of those plans. The Scotts assert that the instant case is analogous to such cases as Ferla v. Metropolitan Dade County, 374 So.2d 64 (Fla. 3d DCA 1979), cert. denied, 385 So.2d 759 (Fla.1980)(while the setting of a speed limit and the decision to use a one-lane road was a planning level decision, and hence was immune from suit, but the design and construction of a median strip was an operational act and was actionable); and Osorio v. Metropolitan Dade County, 459 So.2d 332 (Fla. 3d DCA 1984)(misplaced installation of "stop ahead" sign in deviation from work order was an operational activity).
DOT argues in response that it did not owe the Scotts the duty to build the intersection according to plans drawn by it, and it cites Trianon Park, supra, as authority. DOT notes further that a decision to move *33 a pole from where it was originally located on a plan is still a planning-level decision.
To the extent the plans were modified or an actual decision was made to install the pole in a different location than provided in the original plans, we agree that such decision would involve a planning-level activity. As the supreme court stated in Department of Transp. v. Neilson, 419 So.2d 1071, 1077-1078 (Fla.1982),
[T]he decision to build or change a road, and all the determinations inherent in such a decision, are of the judgmental, planning-level type. To hold otherwise,... would supplant the wisdom of the judicial branch for that of the governmental entities whose job it is to determine, fund, and supervise necessary road construction and improvements, thereby violating the separation of powers doctrine. This is not to say, however, that a governmental entity may not be liable for an engineering design defect not inherent in the overall plan for a project it has directed be built, or for an inherent defect which creates a known dangerous condition.... Such decisions as the location and alignment of roads, the width and number of lanes, and the placing of traffic control devices are not actionable because [any] defects are inherent in the overall project itself.

(Emphasis added); see also Miller v. City of Ft. Lauderdale, 508 So.2d 1328 (Fla. 4th DCA 1987).
To the extent that no decision was made to change the location of the pole, but rather the installation simply failed to follow plans, an operational, rather than a planning-level, activity is involved, and immunity is waived. See Osorio, 459 So.2d at 333. Nevertheless, even if the placement of the pole was not the result of a revised plan on the part of DOT, but was instead placed in its locale at the time of the accident as a result of a mistake, it was still incumbent upon the Scotts to allege that DOT owed them a duty with regard to the placement of the pole. We find the allegations in the second amended complaint insufficient to establish such a duty on the part of DOT.
In Padgett v. West Florida Elec. Coop., Inc., 417 So.2d 764, 766 (Fla. 1st DCA 1982), this court explained that as a general rule utilities have a duty to exercise reasonable care in the location, use and maintenance of its lines, poles and equipment, but that in order to find that the maintenance and placement of a pole or other equipment to be the proximate cause of death, or injury it may be presumed, the death or injury must have "stemmed in a natural and continuous sequence from the placement and maintenance of the pole" or other equipment. The court reasoned that a car leaving the road surface would be considered an intervening cause, but that the existence of an intervening cause would relieve the utility of liability only if the occurrence constituting the intervening cause was not reasonably foreseeable. 417 So.2d at 767.
In Department of Transp. v. Anglin, 502 So.2d 896 (Fla.1987), the supreme court recognized that not all questions involving an intervening cause present a jury question, and that where reasonable people cannot differ, the issue may be one of law for the court to decide, not simply a question of factual causation. Id. at 899. As to foreseeability, we find the reasoning in Florida Power & Light Co. v. Macias by Macias, 507 So.2d 1113 (Fla. 3d DCA), rev. denied, 518 So.2d 1276 (Fla.1987), persuasive. In Macias, the reviewing court discussed foreseeability as follows:
It is incumbent upon the courts to place limits on foreseeability, lest all remote possibilities be interpreted as foreseeable in the legal sense. Since the chance that a vehicle in the ordinary course of travel will deviate from the roadway and collide with a pole is only a remote possibility, under certain circumstances it is not a legally foreseeable event. Thus, merely placing or maintaining a utility pole in close proximity *34 to a roadway does not create a duty on the part of the utility company.
Id. at 1115 (citations omitted). In determining whether a condition creates an unreasonable risk to persons driving on a highway, the distance of the condition from the highway is often determinative. As the Restatement explains:
[T]he essential question is whether it is so placed that travelers may be expected to come in contact with it in the course of a deviation reasonably to be anticipated in the ordinary course of travel. Distance from the highway is frequently decisive, since those who deviate in any normal manner in the ordinary course of travel cannot reasonable be expected to stray very far.... Distance is important, however, only as it affects the recognizable risk; and other factors, such as the nature of the condition itself, its accessibility, and the extent and character of the use of the highway, must be taken into account.
Restatement (Second) of Torts § 368 cmt. h (1965); see also Padgett, 417 So.2d at 768 ("as a general rule, as the distance between the pole and the traveled way increases, there is a corresponding decrease in the number of cases favoring the plaintiff....").
Thus, the plaintiff must allege some ultimate fact which indicates a particularly dangerous condition which would make it likely, and thus foreseeable, that vehicles would deviate from the roadway and collide with the particular pole alleged to have been negligently maintained. See Padgett, 417 So.2d at 768; Macias, 507 So.2d at 1116. Here, there are no allegations of ultimate facts from which foreseeability could be inferred. Accordingly, even under a negligence theory, count I fails to state a cause of action.

Duty to Warn or Correct
In City of St. Petersburg v. Collom, 419 So.2d 1082, 1086 (Fla.1982), the supreme court explained:
[A] governmental entity may not create a known hazard or trap and then claim immunity from suit for injuries resulting from that hazard on the grounds that it arose from a judgmental, planning-level decision. When such a condition is knowingly created by a governmental entity, then it reasonably follows that the governmental entity has the responsibility to protect the public from that condition, and the failure to so protect cannot logically be labelled a judgmental, planning-level decision. We find it unreasonable to presume that a governmental entity, as a matter of policy in making a judgmental, planning-level decision, would knowingly create a trap or a dangerous condition and intentionally fail to warn or protect the users of that improvement from the risk. In our opinion, it is only logical and reasonable to treat the failure to warn or correct a known danger created by government as negligence at the operational level.
Thus, an operational-level duty to warn under Collom arises only with respect to "a known hazard so serious and so inconspicuous to a foreseeable plaintiff that it virtually constitutes a trap." Cygler v. Presjack, 667 So.2d 458, 461 (Fla. 4th DCA 1996)(quoting Department of Transp. v. Konney, 587 So.2d 1292, 1299 (Fla.1991)(Kogan, J., concurring)). Furthermore, if the danger is open, notorious, and readily apparent to the public, there is no duty to warn. See Barrera v. State, Dep't of Transp., 470 So.2d 750 (Fla. 3d DCA), rev. denied, 480 So.2d 1293 (Fla. 1985). We agree with the trial court that the Scotts have not sufficiently pled that the DOT knowingly created a dangerous condition or that the pole in question was hidden or obstructed in any way or was other than "readily apparent" to motorist. See Collom, 419 So.2d at 1083; Houk v. Monsanto Co., 609 So.2d 757, 759 (Fla. 1st DCA 1992).
Appellants do not argue that they should be allowed to further amend their complaint. *35 Accordingly, we affirm the order dismissing the second amended complaint with prejudice.
AFFIRMED.
BOOTH AND JOANOS, JJ., CONCUR.